15-1176 White v. H.J. Heinz Company Thank you, Your Honor. Tell us, Mr. Grady, why you haven't created a horrific weapon for Judge Moore's children to use in the back seat. Well, we're trying to make it safe for Judge Moore's children to squeeze ketchup onto their front trucks while they're riding back to the vehicle. My name is Keith Grady. I'm with the Polson-Hilley firm. I represent Scott White, who's an independent inventor. And we're here today on appeal from the final decision of the Patent Trial and Appeal Board in validating Claims 1-19 of the U.S. Patent 8231026. That's Mr. White's patent. Primary issue on appeal is whether the self-reference, which appears on pages 32-37 of the Joint Appendix, discloses a dual-function condiment container with a totally removable cup. That was the issue that the Patent Office found anticipation based on. They said the self-reference anticipates that limitation and all the other limitations of the claims, of the white patent claims 14-3. Does this case just totally boil down to whether or not the peel-off thing in Selker is totally removable or whether there's some sort of stop or adhesive or something in the middle that will prevent the average user who's not the Hulk from pulling it all the way off? Is that what it comes down to? There's really two issues there. Number one, does Selker contain an explicit disclosure or an express disclosure anywhere of a condiment container with a totally removable cup? Well, I mean, in Figures 3 and 4 of Selker, which are on page 834 of the record, but I'm sure you're familiar with them, it shows the very same exact embodiment, right? These are not two different embodiments, being removable from one end of the container. Then it shows in Figure 4 the same embodiment, the cover being removable from the other end of the container. Now, in both of these embodiments, it doesn't open sort of, you know, I'd say 50%, but that's not exactly right. You understand. In both of the embodiments, the picture shows the cover being pulled back, you know, roughly halfway, basically to the little dipped container part. Correct. My technical language. The container portion, I think, is what it's referred to in Selker, right? Right, and so clearly the film on top is removable or peelable from both sides. That's correct. So in the absence of Selker actually disclosing anything about it not being peelable in the middle, I mean, you look at the pictures. There's nothing in Figure 3 or 4 that would indicate it wouldn't just peel completely off. And, in fact, you look at Figure 3 and 4, and I assume from looking at it that it would peel completely off. That's exactly how this operates. But you look at the figures in connection with the disclosure of Selker, correct? And throughout the disclosure of Selker, Selker discusses a kind of a container where the cover is peeled back partially from the containment portion and partially from the handle portion. And in order to function the way it's intended to function as a dual-use container, one into which food can be dipped or one from which condiment can be loaded onto the handle or knife portion and then spread on the food, the lid can't be totally removed because if it is, it wouldn't function in that second mode. When you say it couldn't be... So certainly in the first mode where you're dipping, it would totally function, right? It would still... I mean, this is a... This little packet can be used in two ways, kind of like the Heins one, right? It could be used to squeeze or it could be used to dip. I might not be getting it exactly right. But it's an either-or. You're not going to do both, right? So if I'm a consumer and I'm intending to dip, I can get full functionality out of the dipping process by pulling that thing completely off. It's only if I'm a consumer and I'm intending to squeeze that I don't pull the whole thing off. Well, not exactly because... I'm sorry. That's okay. No, no, I'm done. Did I interrupt? In selker, the narrow portion is intended to function as a handle. Okay. And there's a disclosure of that in selker that the narrow portion, when it's being used for dipping food... Excuse me. When the cover is peeled off with a wide portion, then the user can grasp the container with the narrow portion. Oh, and you couldn't grasp if the whole top was gone. If the whole top was gone, your hand would be inside, partially, your fingers would be partially inside of that hollow trough, as it's called in selker, and the condiment can migrate in. That's not an appealing way to describe food delivery. A trough, exactly. I've worked on pig feed cases before, and it's an odd way to talk about human food. Well, one of the things I noticed in selker that you had pointed to in column 2 is that it seems like it's the user who needs to stop pulling the top off completely in order to use the product as intended, the way you've described it, which was very helpful. But it's the user that has to do it because it actually says, I mean, to use the package assembly as a container, the user grips the base and the lid and peels the lid apart from the base towards the handle but stopping before reaching the handle region. So that's all action taken by the user. The user, in order to operate this thing properly, has to stop peeling. I guess what I'm wondering is, do you necessarily, you've put a lot of eggs in the basket that there's got to be some stop here. Intuitively, one of skill in the art would know you could use a little adhesive, you could do something. There's got to be a stop, sort of a non-disclosed structural element in selker is what you've kind of, to some extent, hung your hat on. But I'm wondering, do you even need to go that far in order to prevail, or is it enough, in your view, that because the only way to properly use this, if you don't want to dip your thumb into the food source, is to not pull it all the way off? I mean, is that standing alone enough, or do I have to go with you all the way down the road and conclude that selker also discloses an undisclosed stop? I don't think you have to go all the way with me. I think there may be a fork in the road here, and we can go down one side or the other. I don't think selker discloses anywhere in the reference a totally removable cover. I've looked at it, I've read it. It teaches away from it. It says to use this device properly, the user has to pull it up to a certain level and stop. And then you can dip, use as a handle, or if you pull from the handle end, you can load condiments up into that handle portion and then use it as a knife to spread it on the food. So I don't think there's... It teaches away from pulling the cover completely off. Could a user potentially pull the cover completely off? Well, now, you know, we're kind of talking about inherency and whether there's an inherent finding that selker's totally removable, and the board didn't articulate any finding of inherency. And under the Cifreda case, which we cited in our brief, and involves a similar sort of situation where the board relied on a... But this is just a little piece of film, or in, like, the Heinz case, a little bit of aluminum foil kind of thing, right? Right. So, I mean, if you could... When you say it doesn't disclose one that's totally removable, this is totally removable in normal use. In fact, it cautions you in the two places, stop removing at a certain point. So I'm a little bit confused why it would need to inherently do anything, because it seems to me the film is, on its face, totally removable. We're talking about a little film. I understand that, but it's our position that as you read that reference, it teaches away from removing the cover completely. It says, pull it back this far to use it as a dip portion, pull it back this far in the handle to use it for a knife or a strutting function. So we think it teaches away from totally removable cover and doesn't disclose it. In the PTAB proceedings, in the Antipartist Review, we had an alternative ground that we argued that, based on one of ordinary skill in the art reading this reference and understanding how it was intended to function, would recognize that it would necessarily have a stop or a lock-up seal located in about the midpoint of figures 3 and 4 that are interposed in the appendix that we spoke about before. We have declarations from Mr. Dunn and Mr. Morrow. That felt like reading a structural limitation into Selker that I don't see there at all. The fact that one of skill in the art would know how to do it, would know it could be done, that it could be done easily and routinely, is different from whether or not that's present in Selker, isn't it? I don't think it is. I think what Mr. Morrow and Mr. Dunn said was reading the Selker reference and looking at what's disclosed in the Selker reference and the way it's intended to be used partially feels bad in each direction. Then one of ordinary skill in the art would understand that it's necessary to have a stopping point in about the middle of the condiment container. Except the picture doesn't show anything like that and in fact cuts against you. When you look at figures 3 and 4, not only is there not a stopping point, but the film doesn't actually make contact there in the center with the lower portion of 102 or whatever you want to say, that middle portion right there in figure 4 where it's peeled back to. The top film isn't at all in contact. So this isn't a matter of like lunchables, right? Where you've got these four separate compartments and the film in the center, the crosshair that separates the four compartments is actually adhered a little bit because it comes in direct contact with the structure underneath. You know what I'm talking about, right? And so this picture doesn't show that the film ever comes in contact with. So how could there be a stop? Your expert talked about adhesives or other things. But look, it actually shows the food substance in there going all the way through. Is the adhesive in the middle of the food substance in this picture? I mean, you see why I'm having some problems with the idea that... It's a sticky business. laughter I think Serge Wallach has a question before time elapses. Yeah. Under secondary considerations, you argue copying. In order to make that argument, Mr. White has to present evidence of Heinz's efforts to replicate a specific product. Where in the record is that specific product? Joint appendix pages 325 to 340 is the presentation that Mr. White made to Heinz. What's the specific product that they're copying? Well, the specific... Mr. White hasn't produced a specific product. He disclosed his... But you have to have one in order to copy. Well, I think you can copy a prototype or you can copy something that's disclosed in a meeting. It doesn't have to be a tangible product. And what Mr. White disclosed to Heinz was a dual-function condiment container with a totally removable cover. And it appears up 325 to 340 in the joint appendix. In that presentation, he disclosed from Figure 3 of the patent and a description of how the cover would be totally removable and how the reference would operate or how the device would operate. Ms. Grady, you're into your rebuttal time, which I assume you want to save. I would, Your Honor. Thank you. So we will hear from Mr. Pejic. Yes, sir. Should we let him catch us up on his argument? Yes. Good morning, Your Honor. I know, it was bad. I'm Brock Pejic on behalf of Heinz and the Green Bloom and Bernstein firm. We believe that the Board got it right and I'd like to go to Judge Moore's comments on the adhesive. I think it's very instructive if you also take a look at the 026 patent, particularly at Column 4. Which one is the 026? This is in anticipation, right? Yes, anticipation of claims 14 through 18. Oh, patent and suit. That's all right. I thought you were taking me to another piece of higher art and I was confused. I'm sorry. And as far as that goes, the obvious misrejections of the remaining claims have not otherwise been disputed, as Your Honor noted earlier. Okay. So the patent and suit, where do you want to take us? A29, Column 4. And by way of background, both SELFR and the 026 containers, they are constructed the same way. Not only do they function the same way, they are constructed the same way. You have a base, you have a lid, and they're adhered with adhesive. And in particular, I'd like you to take a look, I think it's line 26, where it says the covers of the 026 patent are attached to a top portion of the lip, that being of the base, with an adhesive also suitable for use in the food industry. That is allegedly and admittedly a completely, totally removable cover in the 026. And if I can now ask Your Honors to turn to SELFR, and paragraph 18, let's see, at A37. And I'll go ahead and read it. It's the latter part of the paragraph here, where it says, the package assembly 100 is formed when the base 102 is sealed with the lid 104 using a conventional adhesive 112 deposited on the flange, I'm sorry, applied to either the exterior circumferential flange or the lid. A consumable product is then placed in the containment region. As Judge Moore was noting, there is no disclosure of a stop. There's no disclosure of anything that would inhibit, prevent, or otherwise get in the way of totally removing the top of SELFR. I understand your argument that there is nothing that would get in the way of totally removing this top. But the patent counsels in two different places that users should absolutely not do that because it won't work. How is that not presumptively showing that total removal is not only not contemplated, but would render the product at issue in this patent inoperable? And as such, we shouldn't read this as an anticipatory reference if used in a way that would only render it inoperable. Well, first off, this paragraph is good for all it teaches, but second off... But it teaches you not to pull the whole top off. Not to, absolutely not to. It says it in two places. Your Honor, you are correct. However, what we're missing here is the fact that if you want to dip, there's going to be condiment that works its way not only in the deep end of SELFR, but into this top or the shallow end. And if you truly want all your condiment, you know, that last bit of tasty ketchup, you're going to pull that off so you can get your french fry in there and get the last bit of condiment. The argument isn't that SELFR would not work. It's that it would work less efficiently without a stop. Well, no, it says that if you're going to dip, you want to be able to hold on to the other part and use it like a handle. That's the disclosure in SELFR, is to use it like a handle. Well, it's not a... I mean, I guess technically it's still a handle, even with my thumbs in the ketchup, but it feels like that's pretty clearly what's not intended in SELFR because it expressly says so. So I don't... I mean, the fact that it could be removed and that maybe somebody would be motivated to remove it all is different from whether this reference teaches removing at all. I think what we're missing here is it doesn't say you always have to use it for a handle because if you're actually going to be spreading, you'll be removing the top and squeezing condiment into that trough that's otherwise the handle. So you can certainly hold the container in your hand as such, but you hold... There's no disclosure in SELFR of that. Of squeezing? Of holding it in your hand. There's no disclosure in SELFR of doing it that way. There's no disclosure in SELFR of total removal. What you see in SELFR is two admonishments not to totally remove and two reasons why. In one instance, it's the handle portion, and in the other instance, it's before reaching the containment region. So there's two ways to use this product in disclosure in SELFR, kind of like the two ways to use the Heinz product, and it tells you in either way, do not remove this total top, this whole top. So the fact that it's possible to remove the total top doesn't mean that it discloses removing the total top. Boy, I think that you can look at just the use of these containers in general and look, for instance, at the O2... But wouldn't that be obviousness, not anticipation, if you're going to look to the use of these containers in general as opposed to what is expressly taught by the one reference that's here for anticipation? If we get to the concept that there must be a stop, every teaching of SELFR... I don't think there must be a stop. I mean, come on, you got that much from the last set of questions. My problem is I don't care whether there's a stop. I don't have to go that way because SELFR doesn't ever disclose a totally removable top, and in order to make it a totally removable top, you'd have to go against the expressed teachings of SELFR two places not to totally remove the top. So I'm finding it hard to agree with you that this reference standing alone anticipates. I'd like to direct your honors to figures 2 and 5 of SELFR, which show the container without the top. Figure 2 is at 833. Did the board make any fact findings about figure 2 and 5 along these lines? Did they say that this shows that the top is totally removable or anything? They did not expressly address figures 2 and 5, but I think that's one of the underlying aspects of the board's conclusion that there's nothing in SELFR that would teach a stop and that contrary to a stop, SELFR just relies on the user to determine how far, say, this user would like to peel the top. No, it doesn't allow the user to determine how far. It tells you precisely where the user needs to stop peeling the top, precisely stop before reaching the handle region, stop before reaching the containment region. So it's not like it's just relying on the user. I mean, I made that little joke about the Incredible Hulk earlier, but I kind of meant it, right? Even the Incredible Hulk could come along and, no matter how much adhesive is in there, pull it all off. The fact that it could be done, that it's possible for someone to do, doesn't mean this reference teaches the average skilled artisan to do that. Your Honor, I would think that it does in the sense that figures 2 and 5 show an unsealed container. If it's an unsealed container, by definition, it would have to be sealed prior to that. No, why? Why isn't it prior to being sealed? It's an unsealed container, a container that is not yet sealed. Interestingly enough, when we're talking about the construction of SELFR in paragraph 18, they don't talk about an unassembled container, an assembled container, this is how you assemble it. It talks about how you put the adhesive on the flange and near the top. I'm confused. I don't understand how what you just said is responsive to whether or not figure 2 and figure 5 prove that this is a container whose top has been removed as opposed to a container who has not yet had a top installed on it, since this is a structural invention, and you've got to show it from all the angles and a top-down view. Unless the container top is see-through, a top-down view seems to be a logical way to show it that it's unsealed. If Board made fact findings in your favor, this would probably be a better case for you. I understand, Your Honor. But they didn't make any fact findings along those lines, and so aren't you asking me to do that now? What a prior reference discloses is a question of fact. Now you're asking me to interpret what those figures mean in the first instance. What we're asking this panel to do is to uphold the Board and find that there is no teaching of a stop and no teaching in Selkirk that would prevent the top from being totally removable. See, that doesn't make sense. Suppose the reference was to a chair with four legs. Would you be arguing to me there's no teaching in there not to break off one of those legs and make this damn thing a stool? I mean, that can't be the way we do this, can it? No, Your Honor. What we're doing here, though, is we're missing the horse and the trees, if you will. The 026 claims are product claims. The structure of Selkirk and the structure of the 026 are the same. This is the Screamer case where function can't be used to distinguish from structural product projections. Okay, I didn't follow that, but it seems important. Try again. Well, in Screamer, you had an oil can as the prior art and you had the popcorn can. The arguments there was we were patentable over because the oil can is not suitable for popcorn. Well, not this panel, but this court said no. Functionality does not get you past structural rejections. The structures are the same. The structures operate the same. That is anticipation. The fact that there's a functional aspect out there is irrelevant to what we're talking about. But the claims recite a totally removable lid, right? Don't they? Totally removable contained lid? I don't remember what the term is. It says it's totally removable, but counsel for White is arguing that Selkirk couldn't function in a way for spreading, thus it could not anticipate the O2-6. That is Screamer. We are teaching Selkirk is a structure. It is a container. It has a lid. It's covered with adhesive, and then you can tear it off. Whether or not Selkirk could operate as it is talked about is irrelevant because it's a structure and it anticipates based upon the structure. How is that different from my crazy stool example? Could you please repeat that? I remember the question, but... I mean, my crazy example was a pirate reference discloses a chair, and if you argued to me today, well, wait a minute, the user could break off one of those legs and make it a stool. You know, it could happen. It's true, but it doesn't disclose a stool. Right, but if there were pictures and common sense dictated, we have an expert that is unrebutted. You're a ketchup expert. No, condiments expert, Mr. Wagner. He says reading Selkirk, one skill in the art, understanding that there is only one adhesive, that you would understand that the top is totally removable. And he also has talked about the fact that it functions the same way as the 026, as you noted earlier. If you want to squeeze, you have to squeeze. Tear it off the shallow end, the narrow end, and you can squeeze out. If you want to dip, you tear it from the other end. And so, that being the case, if you want to dip and you want that last bit of ketchup, you are capable of taking it off and dipping it in there. And I don't believe that the patent has to expressly say that you could hold the condiment container in your hand if you wanted to get the last bit of condiment. Because it doesn't take a PhD in ketchup to know that you could hold it other than with just a handle. Because nowhere in Selkirk does it say you must hold it just as a handle. So, I hope I've answered those questions. Would anyone else have a question? If there's nothing further, I would just like to point out that... I don't want you to spread yourself too thin. The one thing in particular is that white experts, when they juxtapose figures three and four and try to, you know, infer a stop, and I believe that. I want to show you the exact slides. Yeah, okay. Figures three or four, the white experts turn three and four to each other and have a small space that they call where the stop would stay. And under the Hokuson case, unless the spec says expressly that these figures are to scale, that there is some relative relationship between them, they're nothing but representative. And so, it is complete error and improper to take figures and then try to infer sizing and features that just aren't there. Essentially, what Mike has done here is fabricated a feature in the prior art to then try to distinguish over it. I mean, it's merely a straw man, Your Honors. And thank you for your time. I guess we're going to stop here. Mr. Grady has a little more than two minutes for rebuttal. Yes, Your Honor, thank you. I'd like to address figures two and five of SELFR. It's clear from the SELFR reference that figures two and five show a top view in figure two of the unsealed container, and figure five shows a top view of the unsealed container showing a serrated edge. What SELFR means by that is, this is what the container looks like before the seal is applied. That's in paragraph 13 of SELFR at page 836, and paragraph 16 of SELFR also on page 836 of the Joint Appendix. Figure three, by contrast, is discussed right in paragraph 14 of SELFR on page 836. Well, to be clear, you just said something that I think went too far. You said paragraph 13 and 16 show that it's before the seal is applied. That's correct. I don't see them saying that. I see them saying paragraph 13 says figure two is a top view of the unsealed container. That's correct. Isn't it possible for the container to be unsealed by having pulled the top off? It's not, Your Honor, because the purpose of figure two is to show a top view prior to application of the seal. Why? Why prior? That's the part that I'm not getting, the prior. If you look at figure three, the description of figure three, it says, it's a side view of a filled container with the seal removed from the containment portion. So when SELFR talks about removing a seal, it uses the word remove. When it talks about the unsealed container in figures two and five, it's just showing a perspective view of that. It's talking about the container without the seal.  So your argument would be if figure three would have, figure two and figure five would have used the word removed rather than unsealed if they meant something where the seal was. Correct. Okay. With the seal removed. Because they used removed SELFR. That's correct, where they were detecting a portion of the seal being removed. I have 18 seconds left, and so I'd like to refer you to page 253 of the appendix for discussion of where Mr. Dunn talks about how a heat seal stop can be created by increasing the temperature on a typical adhesive and the type of typical adhesive that's used in this. Thank you for your time today, and we respectfully request that you reverse the board's decision. Thank you, Mr. Grady. We'll take the case under advisement, and that concludes this morning's arguments. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.